**Opinion filed March 31, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00293-CV

_____

## IN THE INTEREST OF A.S., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 8024-CX**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the parents of A.S.  Both parents appeal; each presents a single issue challenging the sufficiency of the evidence as to the child's best interest.  We affirm.

*Termination Standards and Findings*

Termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016).  To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding

was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001(b). In this case, the trial court found that the mother committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), and (O)—and that the father committed two of those acts—those found in subsections (N) and (O). The trial court also found that termination of each parent's rights would be in the child's best interest. *See id.* § 161.001(b)(2). On appeal,

neither parent challenges the findings made pursuant to Section 161.001(b)(1); however, both parents challenge the best interest findings.

*Evidence and Analysis: Best Interest*

The parents assert that the evidence presented at trial was insufficient to establish by clear and convincing evidence that termination of their parental rights would be in A.S.'s best interest and that the best interest of A.S. would be served by appointing the parents as possessory conservators. We disagree.

The record shows that the Department of Family and Protective Services removed A.S. from the parents based upon domestic violence committed by the father against the mother and the parents' use of drugs while A.S. was in their care. Both parents were arrested while the Department was at the parents' hotel room investigating the initial intake. A.S. was less than three months old at that time, and she was placed with her maternal great aunt.

The mother, who had a history with the Department, partially complied with her court-ordered family service plan, and the Department attempted a monitored return to the mother. The monitored return, however, was unsuccessful, and the child was returned to the great aunt after less than three weeks. The monitored return ended when the mother left A.S. with the mother's grandmother and explained that she "just couldn't do it anymore." The mother's drug use obviously interfered with her ability to take care of A.S.; the mother admitted that she continued to abuse methamphetamine, although she testified that her drug of choice was cocaine. As a result of her continued methamphetamine use, the mother's visitations were suspended sometime after the unsuccessful monitored return. The mother agreed that, at the time of trial, A.S. was where she needed to be because the mother was not a good candidate to be a parent to A.S. at that time, but the mother did not want her rights to be terminated as she hoped to find an answer for her drug problem in the future.

The evidence at trial shows that the father tested positive for methamphetamine at the time of the removal and while this case was pending. A police officer who was present at the time of the removal and arrested the father for assault family violence testified that the father appeared to be "loaded on methamphetamine." The father did not comply with his court-ordered family service plan, was in and out of jail during these proceedings, and did not maintain contact with the Department. The father did not regularly visit the child; he may have attended "a couple" of visits early on in this case. The father was incarcerated at the time of the final hearing and did not testify at trial.

A.S. had lived with her maternal great aunt for nearly all of her life; the mother and A.S. had even lived with the great aunt upon being released from the hospital after A.S. was born. According to the Department's supervisor, the great aunt went "above and beyond" in this case and tried to help the mother become the parent that she needed to be. The great aunt even moved to Abilene and bought a house so that the mother would not have to travel as far to see the child and to otherwise try to help the mother. Ultimately, though, the great aunt feared that the mother's "continuous use of drugs" rendered her incapable of being a safe caregiver for A.S. The great aunt believed that termination of the parents' rights would be in the child's best interest, but she also said that, if in the future the parents were "in the right place" and had turned their lives around, she might be willing to allow them to have some sort of relationship with A.S. The great aunt had a safe, stable, and loving home and desired to adopt A.S. A.S. was bonded to the great aunt and her family. A.S. was doing well in the great aunt's care and was developmentally on target.

The case supervisor for the Department believed that termination of the parents' rights and adoption by the great aunt would be in A.S.'s best interest. The Department's goal for A.S. was for her to be adopted by her great aunt. The child's

4

guardian ad litem agreed that termination of the parents' rights was in A.S.'s best interest.

We do not agree with the parents' contention that the evidence was insufficient to show that termination of the parents' rights would be in A.S.'s best interest, nor do we agree with their assertion that A.S.'s best interest would be served by appointing the parents as possessory conservators. A factfinder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Additionally, a factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *Id.* The parents had endangered A.S.'s well-being and had not demonstrated an ability to meet the child's needs in the future.

At the time of the termination hearing, A.S. was eighteen months old and, thus, could not verbally express her desires. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *Id.* The evidence in this case did not indicate a strong bond between the parents and A.S. The father had constructively abandoned A.S., and the mother's visitations had been suspended due to her drug use. A.S. had lived with her great aunt for all but two months of her life. A.S. was very bonded to the great aunt's family, and the great aunt was committed to adopting A.S., keeping her safe, and providing her with permanency. The need for permanency is a paramount consideration for a child's present and future physical and emotional needs, and the goal of establishing a stable, permanent home for a child is a compelling government interest. *Id.*

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest findings are not supported by clear and convincing

evidence.  *See Holley*, 544 S.W.2d at 371–72.  The trial court could reasonably have formed a firm belief or conviction that it would be in the child's best interest for the mother's and the father's parental rights to be terminated.  We hold that the evidence is both legally and factually sufficient to support the trial court's best interest findings.  We overrule the sole issue presented by the mother and the sole issue presented by the father in this appeal.

*This Court's Ruling*

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


March 31, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.